## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Ronald Monchgesang and
Marguerite Monchgesang

    v.                                  Civil No. 14-cv-262-LM
                                                     Opinion No. 2015 DNH 079
Deutsche Bank National Trust Co.,
as Trustee for Morgan Stanley ABS
ABS Capital 1, Inc. Trust 2006-
HE5, Mortgage Pass-Through
Certificates, Series 2006-HE5


## O R D E R

In a case that has been removed from the Hillsborough
County Superior Court, Ronald and Marguerite Monchgesang seek to
enjoin Deutsche Bank National Trust Co. ("Deutsche Bank") from
foreclosing on their mortgage.  Before the court is Deutsche
Bank's motion for judgment on the pleadings.  Plaintiffs object.
The court held a hearing on defendant's motion on February 13,
2015.  For the reasons that follow, Deutsche Bank's motion for
judgment on the pleadings is granted.

## I. The Legal Standard

"The standard of review of a motion for judgment on the
pleadings under Federal Rule of Civil Procedure 12(c) is the
same as that for a motion to dismiss under Rule 12(b)(6)."
Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st

Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007)).  Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense."  Id. at 679.

## II. Background

In 2006, the Monchgesangs refinanced their home loan and gave a mortgage to their lender, New Century Mortgage Corp. ("New Century").  In late 2007, they fell behind on their mortgage payments.  In early 2008, purported successor mortgagee Deutsche Bank initiated foreclosure proceedings against the mortgaged property.  It did so through its mortgage servicer, Bank of America.

While conducting itself as the Monchgesangs' successor mortgagee, Deutsche Bank was also the trustee for Morgan Stanley ABS Capital 1, Inc. Trust 2006-HE5, Mortgage Pass-Through Certificates, Series 2006-HE5 ("the Trust").  The Trust is governed by a Pooling and Services Agreement ("PSA") that "is governed by the laws of the State of New York."  Am. Compl. (doc. no. 6) ¶ 25.  Among other things, the PSA "require[d] that all initial mortgage loans and mortgages be conveyed to the Trustee no later than . . . June 30, 2006."  Am. Compl. ¶¶ 21-22.  The Monchgesangs' note and mortgage were conveyed to Deutsche Bank after June 30, 2006.

Pursuant to New Hampshire Revised Statutes Annotated ("RSA") § 479:25, the Monchgesangs filed an action in New Hampshire state court to enjoin the 2008 foreclosure.  They were unsuccessful, and Deutsche Bank acquired the mortgaged property at the ensuing foreclosure sale.  Then, Deutsche Bank filed a state-court landlord-tenant action in an effort to gain possession of the property from the Monchgesangs.  In response, the Monchgesangs sued Deutsche Bank in a plea of title to recover the property, and they also re-opened their petition to enjoin foreclosure.

Regarding the re-opening of plaintiffs' petition to enjoin foreclosure, a subsequent state-court order explains:

3

>       After having filed the plea of title in the
> district court, the Monchgesangs moved to reopen the
> petition to enjoin the foreclosure in this court.  The
> court (Groff, J.) conducted a hearing on that motion,
> but Deutsche [Bank] . . . failed to appear.  At a
> subsequent trial management conference on May 12,
> 2009, the parties agreed to consolidate the two
> matters [i.e., the 2008 motion to enjoin foreclosure
> and the subsequent plea of title].  This agreement is
> reflected in the "Assented to Motion to Consolidate."

Am. Compl., Ex. 1 (doc. no. 6-1), at 1 n.1.  Without having

before it either the Monchgesangs' motion to reopen or the

Assented to Motion to Consolidate, this court is hard pressed to

determine: (1) why the Monchgesangs moved to reopen their 2008

petition; (2) why the court re-opened it; or (3) what,

precisely, was litigated in the re-opened petition to enjoin

foreclosure.  In the absence of any better explanation, the

court presumes that the Monchgesangs wanted to reopen their 2008

petition for the purpose of enjoining some hypothetical future

attempt to foreclose, as a prophylactic measure in the event

that they were to: (1) prevail on their plea of title; (2)

regain ownership of the mortgaged property; and (3) face once

again a threat of foreclosure.[1]  Similarly, given the statutory

linkage between a petition to enjoin foreclosure and a

---

[1] It seems unlikely that they would have wanted to re-open
the 2008 petition for the purpose of getting an order that
essentially undid the unfavorable decision the state court had
rendered on their petition to enjoin the 2008 foreclosure,
because that would be the practical effect of success on their
plea of title.

subsequent plea of title, see RSA 479:25, II, this court presumes that the state court re-opened the 2008 petition so that the ruling on that petition could be harmonized with the court's decision on the plea of title.

Regardless of why plaintiffs wanted to revive their petition to enjoin foreclosure, and the reasons why it was revived, that petition, Deutsche Bank's landlord-tenant action, and plaintiffs' plea of title were consolidated into a single case in the Hillsborough County Superior Court.  Following a one-day bench trial, Judge Nicolosi issued an order that included various findings of fact and rulings of law.

In the section of her order titled "Rulings of Law," Judge Nicolosi explained that: (1) "the resolution of this case turns on Bank of America's ability to prove it was the holder of the Note at the time of the [2008] foreclosure," Am. Compl., Ex. 1, at 8; (2) "[t]he question is whether Bank of America has established that it . . . acquired ownership of the Note from New Century prior to the commencement of the foreclosure proceedings," id. (emphasis in the original); and (3) "in order to enforce the Note, [Deutsche Bank] must show that Bank of America . . ., as custodian for Deutsche Bank, possessed the original Note either with a blank endorsement or with a specific endorsement to Deutsche Bank at the time of the foreclosure

proceedings," id. at 9-10.   Judge Nicolosi continued: "While the
court finds that Bank of America did produce the original [N]ote
at trial, the other evidence was insufficient to show that Bank
of America held the Note with the endorsement in blank at the
time the foreclosure process started."  Id. at 10.   Judge
Nicolosi's order concludes this way:

> In light of these factual findings and rulings of
> law, the court ORDERS the following:
>
> 1. The previous foreclosure sale is VOIDED.
> Legal title is restored to the Monchgesangs subject to
> the encumbrances of record.
>
> 2. No permanent injunction is issued.  Deutsche
> [Bank] may restart the nonjudicial foreclosure process
> when and if it can marshal sufficient evidence to
> prove standing.
>
> 3. The landlord and tenant writ is DISMISSED.

Id. at 12.

In May 2014, Deutsche Bank notified the Monchgesangs that
it had scheduled a foreclosure sale.  The Monchgesangs filed
another state-court petition to enjoin foreclosure, and the
state court granted them a temporary injunction that remains in
force.  Deutsche Bank removed the Monchgesangs' action to this
court.  Here, the Monchgesangs filed an amended complaint in two
counts.  Count I is labeled "Res Judicata," and Count II is
labeled "Defendants Lack Standing to Foreclose."

**Discussion**

In the section that follows, the court considers each of
the Monchgesangs' two legal theories in turn.

A. Res Judicata

Plaintiffs' res judicata argument goes like this: (1) Judge
Nicolosi's order "required defendant to 'marshal sufficient
evidence to prove standing' before it could re-start the
nonjudicial foreclosure process," Am. Compl. ¶ 29; (2)
"[i]mplicit in the Court's Order was a ruling that the evidence
defendant presented to the Court to establish its standing to
foreclose was insufficient," id. ¶ 30; (3) "[s]ince the time the
Superior Court's Order [was] entered defendant has not provided
plaintiffs with any evidence of its standing that was not
presented to the [Superior] [C]ourt," id. ¶ 31; and (4) because
plaintiffs have not marshaled any evidence beyond what was
presented to Judge Nicolosi, her 2012 ruling that Deutsche Bank
lacked standing to foreclose bars Deutsche Bank from foreclosing
in 2014.  Plaintiffs conclude Count I this way:

> The Superior Court's final order requiring
> defendant to marshal additional evidence of its
> standing, before it can re-start the non-judicial
> foreclosure process on plaintiffs' home, is binding on
> the parties and precludes defendant from proceeding to
> foreclose without complying with said Order.

Id. ¶ 35.

Deutsche Bank argues that, in the first instance, res judicata does not apply because it is not attempting to relitigate anything.  It also argues that even if res judicata was applicable, that doctrine would be unavailing to plaintiffs because: (1) the causes of action underlying the claims Judge Nicolosi ruled on are not present here; and (2) there was no final judgment on the merits on any relevant cause of action in the previous case.[2]  The court agrees with Deutsche Bank that plaintiffs have not established two of the three elements of res judicata.

The federal full-faith-and-credit statute, 29 U.S.C. § 1738, "requires federal courts 'to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" Patterson v. Patterson, 306 F.3d 1156, 1158 (1st Cir. 2002) (quoting Migra v.

---

[2] Deutsche Bank's argument that there was no final judgment on the merits on any relevant cause of action in the previous case might seem to run counter to its admission that "[t]he Superior Court's judgment was a final judgment on the merits," First Am. Compl. ¶ 34; see also Answer (doc. no. 8) ¶ 34.  It does not.  Judge Nicolosi's order included judgments on three separate causes of action, and the Monchgesangs' complaint in this case does not distinguish between them.  That leaves Deutsche Bank free to litigate the question of whether there was a final judgment on the merits as to any particular cause of action without going against the factual allegation it admitted in its answer.

Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)).

Accordingly, in the analysis that follows, the court applies New

Hampshire's law of res judicata.

"The heart of the doctrine of res judicata is that a final

judgment by a court of competent jurisdiction is conclusive upon

the parties in a subsequent litigation involving the same cause

of action."  Waters v. Hedberg, 126 N.H. 546, 548 (1985)

(quoting Concrete Constructors, Inc. v. The Manchester Bank, 117

N.H. 670, 672 (1977)).  More specifically:

> "The doctrine of res judicata prevents the
> parties from relitigating matters actually litigated
> and matters that could have been litigated in the
> first action.  Appeal of Morrissey, 165 N.H. 87, 92,
> 70 A.3d 465 (2013) (quotation omitted).  "The doctrine
> applies if three elements are met: (1) the parties are
> the same or in privity with one another; (2) the same
> cause of action was before the court in both
> instances; and (3) the first action ended with a final
> judgment on the merits."  Id.

In re Estate of Bergquist, 166 N.H. 531, 534-35 (2014).

## 1. Applicability of Res Judicata

The court begins with Deutsche Bank's argument that res

judicata does not apply to the circumstances of this case

because plaintiffs are not seeking to preclude the relitigation

of a cause of action but are seeking to preclude a nonjudicial

foreclosure.  At first glance, there is some appeal to the

argument that, as plaintiffs rather than defendants, the

Monchgesangs are not properly positioned to invoke res judicata, which is a defense to having to face litigation.  Indeed, the Monchgesangs are attempting to fend off a nonjudicial foreclosure, not a lawsuit.  But, "exercising the statutory power of sale is equivalent to, and done instead of, bringing suit for a decree of sale." Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 90 (D.N.H. 1998).  On that basis, the district court in Bolduc looked beyond the labels attached to the parties and treated the plaintiff's suit as asserting affirmative defenses rather than claims for relief.  That move, in turn, was affirmed on appeal.  See Bolduc v. Beal Bank, SSB, 167 F.3d 667, 671 (1st Cir. 1999) ("who happens to be the plaintiff is not controlling").  So too here.  That the Monchgesangs are plaintiffs in this case is no bar to their invocation of res judicata.

### 2. Same Cause of Action

Deutsche Bank argues that the second element of res judicata has not been met because Judge Nicolosi's case did not involve the same cause of action as this one.  The court agrees with Deutsche Bank that its standing to foreclose in 2014 was not among the causes of action that Judge Nicolosi resolved in 2012.

The New Hampshire Supreme Court has defined the term "cause of action" to mean: (1) "the underlying right that is preserved by bringing a suit or action," Estate of Bergquist, 166 N.H. at 535 (quoting Hansa Consult of N. Am. v. Hansaconsult Ingenieurgesellschaft, 163 N.H. 46, 50 (2011)); (2) "the right to recover, regardless of the theory of recovery," id. (quoting Appeal of Morrissey, 165 N.H. 87, 92 (2013)); and (3) "all theories [upon] which relief could be claimed on the basis of the factual transaction in question," id.

In the consolidated case before her, Judge Nicolosi adjudicated three causes of action: (1) plaintiffs' plea of title; (2) plaintiffs' petition to enjoin foreclosure; and (3) Deutsche Bank's landlord-tenant action.  Plainly, Deutsche Bank's 2014 foreclosure is not an attempt to relitigate the validity of its 2008 foreclosure, which was the basis for plaintiffs' successful plea of title, nor is the current foreclosure an attempt to relitigate Deutsche Bank's unsuccessful landlord-tenant action.  Thus, the only cause of action from Judge Nicolosi's case that could possibly be the first action for purposes of res judicata is plaintiffs' revived petition for an injunction against foreclosure.

Why Deutsche Bank would want to relitigate that cause of action is not at all clear.  Deutsche Bank prevailed; Judge

Nicolosi declined to give plaintiffs whatever it is they were aiming for by reviving their petition to enjoin foreclosure. Nor is it evident why plaintiffs would want the court to give res judicata effect to Judge Nicolosi's decision to deny them the relief they were seeking.  Generally, parties invoke res judicata to give preclusive effect to judgments in their favor, not judgments that went against them.

In any event, the injunction request on which Judge Nicolosi rendered a decision in her 2012 order is not the cause of action here.  In her order, Judge Nicolosi made it clear that her entire decision was based upon the circumstances existing when Deutsche Bank initiated the 2008 foreclosure.  While she had before her various facts concerning the travel of plaintiffs' note and mortgage between 2008 and 2012, and expressed concerns about Deutsche Bank's ability to demonstrate standing to foreclose, Judge Nicolosi could not have properly analyzed or decided whether Deutsche Bank had standing to foreclose in 2012.  That is because: (1) at the time of her ruling, there was no pending attempt to foreclose; and (2) as Judge Nicolosi pointed out in her order, standing to foreclose is measured at the time a foreclosure is initiated, see Am. Compl., Ex. 1 (doc. no 6-1), at 8.  In the absence of a pending foreclosure, Judge Nicolosi could not have decided whether

Deutsche Bank had standing to foreclose in 2012 because there
was no date of initiation to anchor the requisite analysis.  If
Deutsche Bank's standing to foreclose in 2012 could not have
been before Judge Nicolosi then, necessarily, its standing to
foreclose in 2014 was not before her either.  Thus, plaintiffs
have not established the second element of res judicata.  That,
in turn, entitles Deutsche Bank to judgment on the pleadings on
plaintiffs' claim that Deutsche Bank's current attempt to
foreclose on their mortgage should be enjoined on grounds of res
judicata.

### 3. Final Judgment on the Merits

There is also a problem with the third element of res
judicata, the requirement that "the first action ended with a
final judgment on the merits." Estate of Bergquist, 166 N.H. at
535.  The first action between plaintiffs and Deutsche Bank
actually ended with three final judgments on the merits, i.e.,
judgments that: (1) Deutsche Bank's acquisition of the mortgaged
property was void; (2) plaintiffs were not entitled to an
injunction against foreclosure; and (3) Deutsche Bank's
landlord-tenant action was subject to dismissal.  Plaintiffs,
however, are not asking the court to give res judicata effect to
any of those judgments.  Rather, they are asking the court to
give res judicata effect to Judge Nicolosi's statement that

"Deutsche [Bank] may restart the nonjudicial foreclosure process when and if it can marshal sufficient evidence to prove standing."  Am. Compl., Ex. 1 (doc. no. 6-1), at 12.

The problem is that Judge Nicolosi's statement was not any part of her judgment.  Judge Nicolosi's judgments were her three decisions on the claims before her.  The statement on which plaintiffs rely did not resolve any legal claim.  Moreover, Judge Nicolosi gave no indication that she was exercising ongoing jurisdiction over the case or keeping it open in the event that Deutsche Bank might make another attempt to foreclose.  She did not prescribe any particular way in which Deutsche Bank was to demonstrate that it had marshaled the evidence necessary to prove standing, nor did she order Deutsche Bank to provide information to plaintiffs, or anyone else, prior to initiating a future foreclosure.  In other words, the statement on which plaintiffs rely was nothing more than a statement of the law, an observation concerning the way forward for the parties, or advice given to the parties in contemplation of a potential future foreclosure attempt by Deutsche Bank and a defense by plaintiffs.  Therefore, plaintiffs place far too much weight on that statement when they characterize it as a "requirement," or a "pre-condition that the Superior Court placed on [Deutsche Bank's] right to 're-start' the non-judicial

14

foreclosure process," Pls.' Mem. of Law (doc. no. 13) 9.  In
short, plaintiffs' reliance upon Judge Nicolosi's statement is
unavailing because the doctrine of res judicata gives preclusive
effect to judgments, not every idea expressed in a judge's
decision.

### 4. The Monchgesang's Claim

A lynchpin of plaintiffs' claim is their allegation that
Deutsche Bank "has not provided [them] with any evidence of its
standing that was not presented to the [superior] court," Am.
Compl. ¶ 31, which demonstrates their belief that Deutsche Bank
was obligated to provide them with such evidence before
initiating a second attempt to foreclose on their mortgage.
But, other than their construction of Judge Nicolosi's order,
which speaks of marshalling evidence rather than producing it,
plaintiffs offer no legal support for their belief that they
were entitled to evidence from Deutsche Bank before Deutsche
Bank attempted another nonjudicial foreclosure.

In her order, Judge Nicolosi cited United States Bank
National Ass'n v. Kimball for the proposition that to effect a
judicial foreclosure, "a plaintiff must demonstrate that it has
a right to enforce the note, and without such ownership, the
plaintiff lacks standing," 27 A.3d 1087, 1092 (Vt. 2011).  New
Hampshire law also imposes a burden of proof upon a plaintiff in

a judicial foreclosure to "establish [its] ownership of the note and mortgage." Platts v. Auclair, 79 N.H. 250, 253 (1919). But, while the statute governing nonjudicial foreclosure requires the mortgagee to provide the mortgagor with notice of an impending foreclosure sale, see N.H. Rev. Stat. Ann. § 479:25, II, nothing in that statute requires that notice to include proof of the mortgagee's ownership of the note and mortgage.

### 5. The Monchgesangs' Counterargument

In their objection to Deutsche Bank's motion for judgment on the pleadings, the Monchgesangs rely primarily upon an argument that Judge Nicolosi's resolution of their petition for an injunction against foreclosure includes an implicit "ruling that, due to all the irregularities and questions surrounding the endorsement of the note and its transfer, the fact that Deutsche [Bank] held the note at the time of trial – without more – was not enough to confer standing to foreclose." Pls.' Mem. of Law (doc. no. 13) 9. That argument is not persuasive for several reasons.

First, Judge Nicolosi's statement that "Deutsche [Bank] may restart the nonjudicial foreclosure process when and if it can marshal sufficient evidence to prove standing," Am. Compl., Ex. 1 (doc. no. 6-1), at 12, followed her denial of plaintiffs'

16

revived petition for an injunction against foreclosure.  A
ruling that Deutsche Bank <u>lacked</u> standing would seem to lead to
a judgment <u>granting</u> an injunction against foreclosure, not a
judgment <u>denying</u> that relief.[3]

     Beyond that, it does not appear that Judge Nicolosi
actually analyzed Deutsche Bank's standing as of 2012, or made
any factual findings concerning that issue.  To be sure, she
made several observations concerning events after 2008, but all
those observations came <u>after</u> she declared that "the resolution
of this case turn[ed] on Bank of America's ability to prove it
was the holder of the Note at the time of the [2008]
foreclosure."  Am. Compl., Ex. 1 (doc. no. 6-1), at 8.

     Given Judge Nicolosi's statement that resolution of the
whole case turned on the state of affairs in 2008, there would
have been no reason for her to analyze the state of affairs in
2012.  That conclusion is reinforced by the fact that when Judge

---

     [3] At some points, plaintiffs phrase their argument in a
manner that suggests that they may also be invoking the doctrine
of collateral estoppel, which precludes the relitigation of
factual findings essential to a previous judgment.  <u>See</u> <u>Mahindra</u>
<u>& Mahindra, Ltd. v. Holloway Motor Cars of Manchester, LLC</u>, <u>166</u>
<u>N.H. 740, 750 (2014)</u>.  It is difficult see the applicability of
collateral estoppel in this case.  Judge Nicolosi ruled that
plaintiffs were not entitled to an injunction against
foreclosure, and a finding that Deutsche Bank lacked standing to
foreclose would appear, if anything, to undermine that ruling,
rather than being essential to it.  In any event, plaintiffs
have not made any argument that persuades the court that the
doctrine of collateral estoppel applies here.

Nicolosi issued her order, there was no impending foreclosure;
from 2008 until the time she issued her order, Deutsche Bank
owned the mortgaged property, and there was no mortgage to
foreclose.  The potential for a future attempt to foreclose
certainly existed in 2012, but without the commencement of a
foreclosure proceeding, which is the benchmark for evaluating a
mortgagee's standing to foreclose, a finding on Deutsche Bank's
standing at the time of Judge Nicolosi's order would have been
entirely irrelevant to any question properly before her.  While
Judge Nicolosi did not explain why she denied plaintiffs'
renewed petition to enjoin foreclosure, the most likely reason
is that without any foreclosure in the works, a request to
enjoin was simply not ripe, and any decision on the merits of
such a request would have been nothing more than an
impermissible advisory opinion.  See Duncan v. State, 166 N.H.
630, 640, 614 (2014) (explaining that "judicial power in this
State is limited to deciding actual, and not hypothetical
cases").

     5. Summary

    As plaintiffs have failed to establish the second or third
elements of res judicata, that doctrine does not bar Deutsche
Bank from initiating a nonjudicial foreclosure of plaintiffs'
mortgage.  Whether Deutsche Bank is ultimately able to establish

its legal right to complete its pending foreclosure is a
different question, which is addressed in the section that
follows.  The bottom line is this, to the extent that plaintiffs
rely upon the doctrine of res judicata as a defense to Deutsche
Bank's attempt to foreclose on their mortgage, Deutsche Bank is
entitled to judgment on the pleadings.

### B. Standing to Foreclose

In Count II of their amended complaint, the Monchgesangs
claim that Deutsche Bank lacks standing to foreclose on their
mortgage.  Their claim goes like this: (1) Deutsche Bank, as
Trustee for the Trust that purportedly holds the Monchgesangs'
note and mortgage, acquired the note and mortgage after the date
specified in the document that established the trust, i.e., the
PSA; (2) under New York law, conveyances that contravene an
agreement such as the PSA in this case are void; and (3) because
Deutsche Bank's acquisitions of the Monchgesangs' note and
mortgage are void, Deutsche Bank lacks standing to foreclose on
their mortgage.[4]  Deutsche Bank is entitled to judgment on the

---

[4] This is the full extent of plaintiffs' substantive
argument on standing.  That is, they do not contend, as a matter
of substantive law, that Deutsche Bank lacks standing to
foreclose because of any defect in the path their note and
mortgage took from New Century to the Trust, other than the
trustee's belated acquisition of the note and mortgage.

pleadings on Count II because the Monchgesangs do not have standing to challenge the validity of Deutsche Bank's acquisition of their note and mortgage.

The PSA is governed by New York law.  The Monchgesangs base their argument on the following provision of New York law:

> If [a] trust is expressed in the instrument creating the estate of the trustee, every sale conveyance or other act of the trustee in contravention of the trust, except as authorized by . . . law, is void.

N.Y. Estates, Powers and Trust Law ("EPTL") § 7-2.4 (McKinney 2002).  For the proposition that the foregoing statute protects them from foreclosure, the Monchgesangs rely primarily upon Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (unpublished table decision), 2013 WL 1831799 (N.Y. Sup. Ct. 2013).[5]  Deutsche Bank, in turn, relies upon Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79 (2d Cir. 2014).

In Erobobo, the plaintiff mortgagee brought an action to foreclose on the defendant's mortgage and then moved for summary judgment.  See 2013 WL 1831799, at *1.  The plaintiff argued

---

[5] Plaintiffs also rely upon Auroa Loan Services LLC v. Scheller, 992 N.Y.S.2d 157 (unpublished table decision), 2014 WL 2134576 (N.Y. Sup. Ct. 2014).  In his order in that case, Judge Spinner acknowledged "that third parties do not, under ordinary circumstances, enjoy standing to challenge the assignment of an indebtedness from one oblige to another."  Id. at *4.  Judge Spinner deviated from that rule due to circumstances in the case before him that are not present here, principally the mortgagees' claim that they had suffered "damages respecting the marketability of [the] title to the [mortgaged] property."  Id.

that it was entitled to foreclose because it was in possession of the note and the mortgage when it filed its action.  See id. at *2.  The defendant mortgagor countered by arguing, among other things, "that Plaintiff [was] not in fact the owner or holder of the note because it obtained the note and mortgage after the trust had closed in violation of the terms of the PSA [which rendered] the acquisition of the note and mortgage . . . void."  Id.

The court first explained that the "Plaintiff's ownership of the note [was] not an issue of standing but an element of its cause of action."  Id. at *2.  The court then denied the plaintiff's motion for summary judgment because "[t]he evidence submitted by Defendant that the note was acquired after the closing date [specified by the PSA]  . . . is sufficient to raise questions of fact as to whether the Plaintiff owns the note and mortgage, and precludes granting Plaintiff summary judgment."  Id. at *9.  Regarding the question before this court, i.e., whether a legal stranger to a trust agreement has standing to invoke a trustee's alleged violation of that agreement, Judge Saitta assumed that Erobobo had standing to do so, but did not directly address or actually decide that legal issue.  See Rajamin, 757 F.3d at 89-90 (pointing out that Judge Saitta provided no "citation or discussion of the New York

authorities [that have held] . . . that only the beneficiary of
a trust, or one acting on the beneficiary's behalf, has standing
to enforce the terms of the trust").

In Rajamin, the case on which Deutsche Bank relies, the
plaintiff mortgagors sought a declaratory judgment that the
trustees of the trusts to which their loans and mortgages were
purportedly assigned did not actually own those loans and
mortgages because "parties to the assignment agreements failed
to comply with certain terms of those agreements." 757 F.3d at
81.  Thus, the court in Rajamin, unlike the court in Erobobo,
was squarely presented with the question facing this court,
which is whether a mortgagor whose mortgage was assigned to a
trust has standing to challenge the validity of the assignment
under the terms of the agreement establishing the trust.

The trial court in Rajamin dismissed the mortgagors'
complaint, and the court of appeals "affirm[ed] the district
court's ruling that plaintiffs lack[ed] standing to pursue their
challenges to defendants' ownership of the loans." 757 F.3d at
84.  In so ruling, the court considered several different
theories advanced by the mortgagors, including this one:

> [P]laintiffs argue that assignments failing to comply
> with the PSAs violated laws governing trusts.  They
> rely on a New York statute that provides: "If the
> trust is expressed in the instrument creating the
> estate of the trustee, every sale, conveyance or other
> act of the trustee in contravention of the trust,

22

> except as authorized by . . . law, is void." N.Y.
> Estates, Powers and Trusts Law ("EPTL") § 7-2.4
> (McKinney 2002). Here, the PSAs are the instruments
> creating the trust estates, and plaintiffs argue that
> the PSAs were "contraven[ed]" by the Trustee's
> acceptance of mortgage loans conveyed in a manner that
> did not comply with the procedural formalities that
> the PSAs specified, thereby rendering those
> conveyances void under the statute.

Id. at 87. That is precisely the argument the Monchgesangs

advance here. The court of appeals in Rajamin rejected that

argument on grounds that: (1) the plaintiff mortgagors, "as

nonparties to the [PSAs in that case], lack[ed] standing to

assert any nonperformance of those contracts," id. at 88; and

(2) "under New York law, only the intended beneficiary of a

private trust may enforce the terms of the trust," id.

(citations omitted).

As between Erobobo and Rajamin, the court is persuaded by

Rajamin. Rajamin addresses the very same issue facing the court

in this case; Erobobo does not. In addition, the court is

persuaded by the long pedigree the Rajamin court provided for

the legal principle on which it rested its decision. See 757

F.3d at 88.

Finally, in their memorandum of law, the Monchgesangs

assert that Erobobo is currently on appeal, and suggest that

this court should defer ruling on Deutsche Bank's motion for

judgment on the pleadings until the New York appellate court has

23

spoken.   The court is unmoved by plaintiffs' suggestion.   The
Erobobo decision does not directly address the legal principle
at issue here, and plaintiffs do not indicate what issues from
that case are on appeal.[6]   Thus, plaintiffs have given the court
no reason to believe that the appeal in the Erobobo case will
result in an opinion that touches on any of the issues in this
case.

        Because plaintiffs lack standing to challenge the legal
validity of Deutsche Bank's acquisition of their note and
mortgage under the terms of the PSA, Deutsche Bank is entitled
to judgment on the pleadings as to Count II of plaintiffs'
amended complaint.

## IV. Conclusion

        For the reasons described above, plaintiffs have failed to
state a claim on which relief can be granted under either of
their two legal theories.   Accordingly, Deutsche Bank's motion
for judgment on the pleadings, document no. 10, is granted, and
the temporary injunction against Deutsche Bank's foreclosure

---

        [6] Moreover, while some issue from the Erobobo case may have
gone up on appeal, it seems unlikely that the Erobobo decision
was appealed, given that denials of summary judgment are not
generally subject to appeal.

action is dissolved.  The clerk of the court shall enter

judgment in accordance with this order and close the case.

SO ORDERED.

_____

Landya McCafferty
United States District Judge

April 9, 2015

cc:   Elliott Berry, Esq.
      Peter G. Callahan, Esq.